JOSEPH GUAGLIARDO #87290-054
F.C.I.  P.O. BOX 2000
JOINT BASE MDL, NJ  08640


January 24, 2021


Hon. Denise L. Cote
United States District Judge
United States District Court
500 Pearl Street
New York, NY  10007


Re: U.S. v Guagliardo
Case No.: 20-cr-00023-01 (DLC)


Dear Judge Cote:

I am requesting leave to amend the motion for renewal, reconsideration, and reargument submitted on January 14, 2021. The proposed amended motion is submitted herewith.

The reason for the amendment is that I received my sentencing transcript on January 22, 2021 and there are items in the transcript which are essential to the pending motion.

Thank you for your consideration of this request.


Respectfully,

Joseph Guagliardo
Movant pro se


cc:

Eli J. Mark (AUSA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------x
UNITED STATES OF AMERICA          :

             Respondent,          :

                    :

        v                 :

                    :

JOSEPH GUAGLIARDO                 :

                    :

        Defendant/Movant.   :
-----------------------------x

Case Number:

1:20-CR00023-01 (DLC)

AMENDED
MOTION TO REARGUE
RENEW/RECONSIDER

    Joseph Guargliardo, movant pro se (the "Movant") hereby gives notice of motion to reconsider, renew, and reargue the Decision and Order of this Court dated January 11, 2021, and, upon such reconsideration, renewal, and reargument, grant the relief prayed for herein and as originally requested in the motion made on December 2, 2020.

## INCORPORATION OF EARLIER PLEADINGS

    The contents of Movant's motion papers dated December 1, 2020, and the Supplement thereto dated January 14, 2020 are hereby incorporated here with the same force and effect as if fully set forth here.

## PROCEDURAL HISTORY

    On December 1, 2020, the Movant filed a Motion for Compassionate Release from incarceration pursuant to 18 U.S.C. §3582(c)(1)(A)(1) to allow Guagliardo to serve the remainder of his custodial sentence in home confinement. (the "Motion")

On January 14, 2021, the Movant filed a supplement to the Motion to apprise the Court of his materially changed health conditions and at Fort Dix Minimum Security Camp generally. (the "Supplement") A copy of the Supplement is annexed hereto for the convenience of the Court at Exhibit "A" and made a part hereof.

The reason for supplementing the Motion was that the Movant had not received any opposition papers to the Motion and the substantial material change at FCI Fort Dix Camp needed to be brought to the Court's attention.

On January 19, 2021, Mr. Guagliardo received the opposition papers (the "Opposition") filed by AUSA Eli J. Mark et. al.

## PROCEDURAL ERRORS & IRREGULARITIES

Guagliardo's Motion was filed on December 2, 2020 and the government filed its opposition on January 8, 2021 without extension being granted by the Court.

It should be further noted this Court rendered its decision 5 days after the filing of the government's opposition without giving the Movant the opportunity to submit a reply thereto.

Additionally, the government affirmed that it served it opposition papers on January 8, 2021, although the document's envelope is meter-stamped January 11, 2021. A copy of the affirmation of service is attached hereto as Exhibit "B" and made a part hereof. The date on the envelope indicates that it was mailed at least 3 days later than the government represented to this Court.

Lastly, it must be noted that Guagliardo received the govern-

( 2 )

ment's opposition papers January 20, 2021, one day after he received the Court's Decision and Order.

By denying the Movant the opportunity to refute spurious allegations in the Opposition and has further denied Guagliardo the opportunity to bring relevant and material facts before this Court for its consideration prior to the rendering of a decision.

## GUAGLIARDO HAS DEMONSTRATED
## EXTRAORDINARY & COMPELLING CIRCUMSTANCES

As conceded by the government and as indicated in the Order, the Movant has satisfactorily demonstrated "extraordinary and compelling" circumstances as required by 18 U.S.C. §3582(c)(1)(A). Accordingly, that issue is not being addressed herein and should be construed as favorable to the Movant.

## FCI FORT DIX'S COVID MITIGATION EFFORTS HAVE FAILED

Both this Court and the government concede that Mr. Guagliardo's medical conditions place him at severe risk of contracting COVID-19. That prospect has unfortunately come to pass.   (See Insert "A")

On January 11, 2020 Guagliardo was notified that he has tested positive for COVID-19.

He is currently residing with over 60 inmates who have COVID. There is no social distancing, no consistent use of masks, no cleaning and no maintenance of health protocols.

In fact, Guagliardo sleeps less than 2 feet from the next inmate in that dormitory with 60 prisoners, many with similar spacing.

Despite the government's contention that Guagliardo has received appropriate medical attention, (See Opposition @ fn. 9) nothing could be further from the truth. He has received no medical consultation or treatment for his prostate cancer, has not received prescribed medications, and has been forced to wear only plastic shower shoes since September 4, 2020 because the B.O.P. has refused to provide him with his medically-prescribed footwear. The government acknowledged that the Movant is not receiving prescribed necessary medication merely because they are not on the "BOP National Formulary." (Oppostion p. 18 fn. 12)

Both this Court and the government concede and recognize that Guagliardo is at a high risk of COVID complications. He is presently suffering from COVID-19 and at risk of exposure to new strains of the virus because of the negligence and abrogation of responsibility at FCI Fort Dix. Furthermore, there is no medical evidence that he will not be stricken again if he survives the current infection. In fact, two Fort Dix Camp inmates who contracted COVID last spring have now tested positive again. It is undeniable that the likelihood exists that he will be re-infected if he is forced to live in the incubator-like 60 inmate dormitory where he is currently housed, rather than alone in home confinement.

## GUAGLIARDO IS NOT SEEKING EXTRAORDINARY RELIEF

Contrary to the government's position, which this Court adopted, the Movant is not seeking to have his 22 month sentence shortened to four months. He is rather, seeking to serve the balance of his 27 month sentence in home confinement, away from the daily threat of infection from 60 infected inmates.

Also contrary to government assertions, Guagliardo accepts responsibility for his actions and the consequences thereof. He has allocuted to his conduct and expressed his remorse.

It is counterintuitive and beyond the scope of his sentence to acknowledge the Movant's vulnerability to complications and death from COVID, yet still compel him to live with 60 infected inmates in close quarters. A suitable and just alternative exists. That is to say, a sentence of home confinement as a substitute for continued incarceration in life-threatening conditions.

There are numerous precedents for doing so, wherein similar relief was granted. (See cases cited in Supplement attached) He is only asking to be treated in a like manner as the inmates in those cited cases.

Guagliardo furthermore has a steady income and health insurance, so he will not be a burden on society while in home confinement.

## CONCLUSION

Given that: (i) this Court and the government concede and recognize that the Movant is under a clear and present danger to his health and life due to COVID; and (ii) whereas he has now contracted the disease— a fact not known to him at the time of his Motion, and (iii) given the fact that he was denied the opportunity to reply to the Opposition and present the facts herein; it is respectfully requested that upon reargument, renewal, and reconsideration, this Court modify its prior sentence and resentence him to a term of home confinement with conditions satisfactory to the Court while taking into consideration his medical needs, plus grant any further relief deemed just proper and equitable.

( 5 )

## INSERT A

The movant first received the sentence transcript on January 22, 2021— after submission of earlier motion for reconsideration. The movant respectfully refers this Court to page 61 of the sentencing transcript. There the Court stated:

> "[t]here are two principal reasons not to impose a term of imprisonment on the defendent are his health situation in the midst of the COVID crisis. He has no health condition that the Bureau of Prisons couldn't otherwise adequately address. The issue is whether the particular circumstances posed by COVID would prevent it from keeping him healthy while he serves a term of imprisonment."

(Sent. Tr. p. 61)

It is clear that this Court conditioned incarceration on the Bureau of Prisons keeping Mr. Guagliardo healthy. It is submitted that this Court, by its own words would have decided against imprisonment if knowing that Mr. Guagliardo would contract COVID-19.

Furthermore, at page 62 of the sentencing transcript, the Court expressed its confidence that the B.O.P. can adequately care for Mr. Guagliardo if it imposes a term of imprisonment.

Lastly, on page 65 of the Sentencing Transcript, the Court stated that it would require the B.O.P. to provide the medications needed by Guagliardo. A copy of the cited pages of the transcript is attached hereto at Exhibit "C" and made a part hereof.

As noted below, Mr. Guagliardo has contracted COVID-19, the B.O.P. has failed to treat Guagliardo at all, and has failed to provide the the prescribed medications.

Therefore, the B.O.P has failed to comply with the conditions specified by this Court at sentencing as justifying incarceration.

*IT MUST ALSO BE NOTED THAT AN INMATE AT THE FCI FORT DIX MINIMUM SECURITY CAMP, MYRON CROSBY, died FROM COVID-19 ON January 27, 2021.

## AFFIRMATION

I, the undersigned Joseph Guagliardo, Movant pro se, hereby affirm under penalty of perjury that the foregoing Amended Motion is true to the best of my knowledge and belief.

Dated: January 24, 2021

Joseph Guagliardo

Movant pro se

## CERTIFICATE OF SERVICE

I, the undersigned Joseph Guagliardo hereby affirm under pen-
alty of perjury that a true copy of the Amended Motion for re-
consideration, renewal, reargument submitted herewith was deposited
in the outgoing inmate mail at Fort Dix, New Jersey on January 24,
2021. It was addressed to the United States Attorney, One St. An-
drews Plaza, New York, NY  10007, and had sufficient First Class
Postage affixed thereto.


Dated: January 24, 2021

_____
Joseph Guagliardo

A

Dear Judge ~~Cote~~ *COTE* :

    Attached hereto is a supplement to my pending motion, together with a certificate of service on the U.S. Attorney.

    My motion has been pending since December 2, 2020. The U.S. Attorney has not filed opposition papers. Given the 789 active cases of Covid-19 at FCI Fort Dix, I am currently being forced to sleep next to "60" infected inmates. Given my obesity, ~~pancreatic~~ *Prostate (1).* cancer, denial of medication, and the other conditions detailed in my motion, I am very concerned for my health and my very survival.

    I respectfully ask the court to issue its decision on my motion papers as supplemented herein without waiting for opposition papers that could have been filed after my December 2, 2020 submission.

Thank You

Joseph Guagliardo

CC: U.S. ATTORNEY

I, Joseph Guagliardo, appearing Pro Se, respectfully submitts this (supplement to the motion on file/~~reply to the opposition papers submitted by Assistant U.S. Attorney~~ ).

The contents of my motion papers are restated and incorporated with the same force and effect as if more fully setforth at length herein.

Since the filing of my motion on December1, 2020, FCI Fort Dix has been overwhelmed with Covid-19 cases and I have been placed in a life threatening situation. The following is a chronological list of the cases at Fort Dix FCI:

| Date | Inmates Positive | Staff Positive | Inmate Recov. | Staff Recov |
|------|------------------|----------------|---------------|-------------|
| 10/20 | 9 | 5 | 35 | 6 |
| 10/30 | 159 | 8 | 34 | 6 |
| 11/1 | 165 | 8 | 35 | 6 |
| 11/3 | 209 | 14 | 34 | 6 |
| 11/9 | 229 | 12 | 41 | 6 |
| 11/12 | 232 | 15 | 41 | 6 |
| 11/16 | 238 | 15 | 41 | 6 |
| 11/21 | 238 | 18 | 45 | 6 |
| 11/25 | 255 | 20 | 46 | 6 |
| 12/14 | 103 | 33 | 266 | 6 |
| 12/15 | 15 | 45 | 355 | 6 |
| 12/17 | 17 | 18 | 356 | 36 |
| 12/21 | 17 | 18 | | |

as of January 9, 2021, 1,377 total Covid cases have occurred. Of these cases, 812 cases remain currently positive. These statistics place FCI Fort Dix the #1 federal facility for Covid-19 cases.

I am presently placed in the B wing of the FCI Fort Dix minimum security camp (the"camp). The camp comprises two(2) wings, that each house approximately 65 inmates each. The A wing inmates were tested for Covid-19 and 38 inmates tested positive and were removed to quarantine. The B wing inmates were recently tested, however , as of the date of this submission, the results of the Covid-19 tests were not made available to the inmates.

Although housed in separate wings, the A-side inmates and the B-side inmates continue to cohabitate and share common eating, tv, computer, telephone, library and chapel areas, in addition to common walkways and points of access.

In essence, we are living together without any social distancing, without masks, PPE, disinfecting and any managed protocol for cleaning, disinfectant and protection for inmates against Covid-19.

This incredible risk to our health is made worse once its realized that the B wing inmates have not received the results of the Covid-19 tests and that A wing inmates who were infected continue to use common phones, worked in the kitchen area and went about their lives without any masks, social distancing or adherence to health protocol.

This toxic environment is made worse by the failure of the Fort Dix administration to provide me with my perscription medications and my medically prescribed footwear. I have been walking in "plastic" shower shoes since September 4, 2020.

These conditions are intolerable, injurious and detrimental to my physical and mental health and place me in a real and present danger of contracting Covid-19.

The Federal courts have recognized the health problems at FCI Fort Dix and have granted several Fort Dix inmates compassionate release from incarceration:

> Lawmakers have demanded answers from the BOP, but that has not
> changed the problem within the prison. In response, judges around our
> district and others whose defendants have been sent to FCI Fort Dix
> have intervened to protect the health of the incarcerated where the
> BOP is clearly unable to do so. The following list of some of the

recent grants of compassionate release or temporary furlough show how judges have used this authority:

* U.S.A. vs Belliard et al, (7:16-NJ-05949-VA(D.NJ., 12/17/20)(granting compassionate release to Fort Dix inmate);

* U.S. v. McCalla, 2020 WL 3604120 (D.NJ., July 2, 2020)(granting compassionate release to Fort Dix inmate with chronic asthma,high blood pressure, obesity, and chronic renal disease);

* U.S. v. Rodriguez, 00-CR-762 (JSR)(S.D.N.Y., Sept. 30, 2020)(granting resentencing to 30 years down from life without paraole to Fort Dix inmate convicted of torture and murder-for-hire of a government informant in furtherance of narcotics conspiracy; inmate had no infractions in 20 years of imprisonment);

* U.S v Talal Soffan (3:19-CR-30004(MGM)(Nov. 2020)(granting compassionate release to Fort Dix inmate due to obesity);

* U.S. v. Robinson, 2020 WL 4041436 (E.D. VIR., July 17, 2020)(granting compassionate release to Fort Dix inmatewith high blood pressure);

* U.S. v. Hayes, 2020 WL 4001903 (E.D. Mich. July 15, 2020)(granting compassionate release to Fort Dix inmate with obesity, asthma, sleep apnea);

* U.S. v. Amaro, 2020 WL 3975486 (S.D.N.Y., July 14, 2020)(granting compassionate release to Fort Dix inmate with medical and mental health conditions);

* U.S. v. Hernandez, 2020 WL 38993513 (S.D.N.Y., July 10,2020)(granting compassionate release to Fort Dix inmate with obesity,COPD, and diabetes);

* U.S. v. Browne 2020 WL 3618689 (D. Mass., July 2, 2020)(granting compassionate release to Fort Dix inmate with obesity,hypertension, asthma,hyperlipidemia, dibetes, and pancreatis);

* U.S. v. Debartolo, 2020 WL 3105032 (D.RI., June 11, 2020)(granting compassionate release to Fort Dix inmate with chronic kidney disease, and hypertension);

* U.S. v. Anderson, 2020 WL 2849483 (S.D.N.Y., June 3, 2020)(granting compassionate release to Fort Dix inmate with obesity);

* U.S. v. Smith, Crim No.15-44 (W.D. Pa., June 26, 2020)(granting compassionate release to Fort Dix inmate with sarcoidosis);

* U.S. v. Woodward, Crim No. 12-105(RAJ)(E.D.Va. June 26, 2020)(granting compassionate release for Fort Dix inmate with obesity, heart disease, and retinal disease);

* U.S. v. Al-Jumail, Crim No. 12-20272(DOH)(E.D.Mich, 5/12/20)(granting compassionate release to Fort Dix inmate with heart disease diabetes, and retinal disease);

* U.S. v. Pena, 2020 WL 2301199 (S.D.N.Y., May 8, 2020)(granting compassionate release to Fort Dix inmate with high blood pressure);

* U.S. v. Williams, 2020 WL 1974372 at *4 (D. Conn. Apr. 24, 2020)(granting compassionate release to Fort Dix inmate with diabetes and high blood pressure);

* U.S. v. Logan, No. 1:12-CR-308, Dkt. No. 179 (N.D.N.Y., Apr. 22, 2020)(granting compassionate release to Fort Dix inmate with diabetes, hypertension, hypercholesterolemia, and coronary artery disease);

* U.S. v. Dorian Avery, No 1:14-CR-810 (JMF) (S.D.N.Y.,Nov. 16, 2020) (granting compassionate release to Fort Dix inmate with severe obesity).

For the reasons set forth herein and as stated in my motion papers, I respectfully request that this court grant my motion for compassionate release/modificattion of sentence pursuant to 18 U.S.C. sic. 3582(c)(1)(A)(i).

Respectfully Submitted

January 14, 2021

Joseph Gaugliardo #87290-054
F.C.I. P.O. Box 2000
Joint Base MDL, NJ 08640

AFFIRMATION

I, the undersigned Joseph Guagliardo, Movant pro se, hereby affirm under penalty of perjury that the foregoing Motion and Memorandum in Support thereof is true to the best of my knowledge and belief.

Dated: January 14, 2021

Joseph Gaugliardo

**AFFIRMATION OF SERVICE**

I, Eli J. Mark, affirm under penalty of perjury as follows:

1.      I am an Assistant United States Attorney in the Southern District of New York.

2.      On January 8, 2021, I caused a copy of the Government's memorandum of law in opposition to the *pro se* motion for compassionate release filed by defendant Joseph Guagliardo, a/k/a "Joseph Gagliardo," to be served on the defendant via U.S. mail at the following address:

> Joseph Guagliardo
> Register No. 87290-054
> FCI Fort Dix
> Satellite Camp
> P.O. Box 2000
> Joint Base MDL, NJ 08460

Dated: New York, New York
        January 8, 2021

                        s/Eli J. Mark
                        Eli J. Mark
                        Assistant United States Attorney
                        (212) 637-2431



US OFFICIAL MAIL

$ 008.20⁰

ZIP 10007
02 4W
0001131775

FIRST CLASS

CERTIFIED MAIL

7019 0360 0000 5394 6827

Joseph Guagliardo
Register No. 87290-054
FCI Fort Dix
Satellite Camp
PO Box 2000
Joint Base MDL, NJ 08460

ment of Justice
Attorneys Office
trict of New York
Plaza
ork 10007-1703

EXHIBIT C

1   complex.  I have very serious criminal wrongdoing on a

2   significant scale in which the defendant lined his own pockets

3   and stole from MCU and its members significant sums of money.

4        I have submissions that suggest to me up until today

5   very little remorse for what has happened here.  That suggests

6   that a sentence that has a component of individual deterrence

7   is appropriate.

8        And of course, there is a need for general deterrence.

9   Be it volunteers, board members, executives, or otherwise for

10  organizations that are essentially devoted to the service of

11  others and to use that opportunity to line your own pockets in

12  a massive way requires a significant sentence.

13       The two principal reasons not to impose a term of

14  imprisonment on the defendant are his health situation in the

15  midst of the COVID crisis.  He has no health condition that the

16  Bureau of Prisons couldn't otherwise adequately address.  The

17  issue is whether the particular circumstances posed by COVID

18  would prevent it from keeping him healthy while he serves a

19  term of imprisonment.

20       And the second issue is whether his law enforcement

21  background presents such a challenge to the Bureau of Prisons

22  that it can't keep him secure given that background.

23       Of course we know with respect to the latter, that's

24  not true.  Sadly, law enforcement officers are convicted and

25  sentenced to prison, and the Bureau of Prisons is familiar with

1    the special care they must take to keep such defendants secure.

2              But I'm going to ask you, Mr. Mark, since I am going

3    to impose a term of imprisonment here, that you be in touch

4    with the Bureau of Prisons to make sure that they're well aware

5    of the need to be conscious of and make appropriate

6    arrangements for someone who was once a law enforcement

7    officer.

8              MR. MARK:  Yes, your Honor.  And I will do that right

9    after the proceeding.

10             THE COURT:  Thank you.

11             I've had many submissions to me in connection with

12   defendants who are serving terms of imprisonment during COVID.

13   Every judge, every federal judge, around this country has many

14   of these submissions.

15             We make our determinations individually based on the

16   facts and circumstances presented when we deal with either bail

17   applications or compassionate release motions or other similar

18   motions that require us to think about the interaction between

19   a custodial sentence or term and someone's individual health

20   situation and the Bureau of Prisons' procedures for dealing

21   with the COVID crisis.

22             So informed by that intense history of the last few

23   months, I am confident that the Bureau of Prisons can

24   adequately care for Mr. Guagliardo if I impose a term of

25   imprisonment, which I am going to do.

1    play.  If that's something that could be taken into

2    consideration and mentioned and marked so that he can get the

3    proper treatment.

4           THE COURT:  I'm going to ask you, Mr. Arlia, today to

5    provide a list of the medications and whatever else you want me

6    to recommend to the Bureau of Prisons that I include on the

7    judgment of conviction as recommendations to them for their

8    consideration in their treatment of the defendant.

9           I am not going to put on the judgment of conviction

10   the law enforcement history because, Mr. Mark, the judgment of

11   conviction will be filed publicly, and I would prefer you to

12   deal with that directly and not through the judgment of

13   conviction.

14          Mr. Arlia, can you provide the recommendations with

15   respect to the defendant's health that you would like to appear

16   on the judgment of conviction to the government later today?

17          MR. ARLIA:  Yes, your Honor.

18          THE COURT:  Okay.  And then if the parties can consult

19   and provide those to my chambers tomorrow, I would appreciate

20   it.

21          MR. ARLIA:  Certainly, your Honor.

22          THE COURT:  Thank you so much.

23          MR. ARLIA:  Your Honor, I also have a request with

24   respect to my client's passport.  Obviously once incarcerated,

25   I'd like to at least have permission by the Court that at some